In re CULLINAN, State Com'r of Excise.

(Supreme Court, Appellate Division, First Department. January 22, 1904.)

**1. LIQUOR LAW—SALOON AND RESTAURANT—ADJUSTABLE PARTITION.**

Maintenance of a saloon and restaurant in the same building with a substantial adjustable partition, which is kept closed on Sunday, thereby shutting up the saloon, is not a violation of the liquor law as to Sunday sales.

**2. SAME—SALE ON SUNDAY—EVIDENCE.**

In a proceeding for the revocation of a liquor tax certificate for alleged sales on Sunday, evidence *held* insufficient to justify revocation.

Appeal from Special Term, New York County.

Petition by Patrick W. Cullinan, as state commissioner of excise, against Max T. Porges, for the cancellation of a liquor tax certificate.

The following is the opinion of the court below (McCall, J.):

This is an application to revoke and cancel a liquor tax certificate pursuant to the term of subdivision 2 of section 28 of the liquor tax law (Laws 1900, p. 862, c. 367, § 9). At the time of the application before Mr. Justice Leventritt the certificate holder raised the question of the constitutionality of this section of the liquor tax act, but simultaneously he proceeded to comply with its requirements, and filed a verified answer, thereby waiving his rights. See Micha Case (Sup.) 78 N. Y. Supp. 466. This, therefore, brings us to a consideration of the merits of the accusations made against the certificate holder, and they are embraced under two heads: First. Having opened and unlocked the doors and entrances into the place where liquors were sold and kept for sale on said premises, on Sunday, October 19, 1902. Second. Illegal sales of liquor on a Sunday to four different persons, to wit, the excise inspectors Senn, Frank, Churchill, and Stillman.

As to the first charge, the circumstances as revealed by the record are as follows: The premises are known by the street numbers 36 and 36½ Rivington street, with entrances on Forsyth street, known as Nos. 168–170. For some time prior to the date when both of these places came into the possession of the certificate holder, they were occupied as two distinct places by two different tenants; one of them by Porges himself as a saloon, and the other by one Kusmer as a restaurant. Porges subsequently acquired both places, and, desiring to keep it divided as originally it had existed, he constructed on the dividing line an adjustable partition, which on Sundays he closed, thus dividing his bar or saloon from his dining room or restaurant; and on week days he opened the partition by adjusting the doors between the columns that supported the large girder which sustained the weight of the upper part of the building, and at the same time marked the division of the rooms. There is no violation of the statute in maintaining such an arrangement; on the contrary, it affords proof of an intention and desire to comply with the requirements of the law. The partition was a strong, substantial one, extending from floor to ceiling, and on the particular Sunday when the violation of law is alleged to have occurred it is undisputed by anything in the record that I can find that it was tightly closed, and distinctly and completely divided these two rooms; that access to the building was not had by the excise inspectors through the door that led to the barroom, but through another door, that opened into the restaurant or dining room. It matters not that on the following Tuesday or Wednesday the doors of this partition between these supporting columns were opened, and that on either of these days the room in which the bar was located could be approached from this dining room or restaurant. The question before us is as to the condition existing on that Sunday (October 19th), and the testimony of the four officers of the state department is conclusive on the point that the bar was entirely separate from this room on that day, and access to the barroom could not be had by customers of the place. I therefore find the charges as set out under the first head wholly unsustained.

Now, as to the charge of illegal sale, set out under the second head, the condition of the record as to this is very perplexing. This certificate holder conducts upon these premises a hotel—not one of the "mushroom" order, which recent legislation had been so prolific of, but a substantial hotel, about which the evidence in this case shows the state authorities to have said "that it was the best-furnished hotel on the East side." Porges has been in this business for over 26 years, and the complaint contained in this petition the record shows to have been the first that was ever lodged against him. Yet four state inspectors testify that they entered his place on Sunday, October 19th, and, sitting at tables in a room containing many people, asked for and were furnished with whisky and other drinks; that the whisky was served from a bottle that was allowed to remain upon a table; and, further, that they were served with these drinks without ordering a meal. On the other hand, the testimony of the waiter who was then in the employ of Porges, but who has since left his employment, is that these four men asked for drinks, were told they could not have any except with meals, and that thereupon one of the number ordered a steak for two, and sandwiches were ordered by the other; that at the table with two of these inspectors sat two other people, customers of the restaurant, who ordered eggs and stew; that drinks were then ordered and served, the orders for the meals given to the kitchen, and that upon his return to the table when the food was ready, for the purpose of serving same, he finds that the two men who had ordered the steak had left the place, but the other two remained, paid for the sandwiches and drinks furnished them, and then also left; that as a result of the departure of the first two without paying for their meal the waiter had words with the cashier of the establishment on being compelled to pay for the meal himself, and the incident was actually the cause of the witness leaving the employment of Porges. The certificate holder also produced the two customers who sat at the table with these two inspectors, and their testimony corroborates the waiter in every essential particular. One of the state inspectors himself corroborates the waiter as to the order for the sandwiches, although it is true he modifies his testimony at a subsequent hearing before the referee, which, under the circumstances, only tends to cast a suspicion on the entire evidence given by him. Altogether, the record in this case is wholly unsatisfactory, and, where the results are so drastic, and there exists so much dubiety as to the state's case, the court is not warranted upon such questionable proof in issuing an order canceling the certificate.

The motion is therefore denied.

Argued before VAN BRUNT, P. J., and INGRAHAM, McLAUGHLIN, HATCH, and LAUGHLIN, JJ.

H. H. Kellogg, for appellant.
I. Cohn, for respondent.

PER CURIAM. Judgment and order affirmed, with costs.

---

(42 Misc. Rep. 278.)

## BLOCH v. BLOCH.

(Supreme Court, Trial Term, New York County. December, 1903.)

1. RECEIVER OF FIRM—SUBSEQUENT BANKRUPTCY—COMPENSATION.

Where a receiver in an action to dissolve a partnership has been appointed in a state court, and within four months the firm has been adjudicated bankrupt, and a receiver in bankruptcy has been appointed, on his application to the state court for the fund in compliance with the order of the bankrupt court the state court will order its receiver to pay over to him such fund, and the state receiver must apply to the bankruptcy court for the allowance of his commissions and expenses.

2. SAME—ACCOUNTING—DISCHARGE.

Where a receiver is appointed in an action to dissolve a firm in a state court, and thereafter the firm is declared bankrupt, and the receiver turns